The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping Jr. and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award except for the addition of Finding of Fact (24), Conclusion of Law (5) and Award paragraph (5) on the issue of attorney's fees pursuant to G.S. § 97-88 and other minor structural changes.
This matter involves two separate injuries. The first one, I.C. File No. 423957, involves admittedly compensable bilateral hernias sustained on 16 March 1994 that were subject of a prior Industrial Commission Award. The second, I.C. File No. 466695, involves an alleged left inguinal hernia plaintiff sustained on 25 August 1994.
* * * * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the jurisdictional and other Stipulations agreed upon by the parties prior to the hearing before Deputy Commissioner Shuping in a Pre-Trial Agreement, which is incorporated herein.
* * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was a thirty-seven (37) year old male on the date of the hearing before Deputy Commissioner Shuping. Also at that time plaintiff was enrolled at Vance-Granville Community College attempting to obtain retraining so that he could obtain a light duty position earning wages comparable to those he was accustomed to in his prior positions. Previously, plaintiff's work history involved heavy work requiring him to regularly lift more than fifty pounds. Should plaintiff return to that type of work he would face a substantial risk of recurrent hernias. Plaintiff, since graduating from high school, has also taken courses at Weidner University, Delaware County Community College and the University of Pennsylvania, obtaining a certificate in coatings and adhesive at Weidner University, and he obtained licenses as a water treatment plant operator I and II at Wake Tech.
2. Plaintiff's other work history includes working for GAF Corporation from 1975 until the 1980's as a quality control technician, fork lift operator and utility operator, as a quality control technician at Chemical Coating and Engineering, delivering newspapers for a paper in Pennsylvania and driving a trash truck for Waste Industries after moving back to North Carolina. All of these positions required him to regularly lift more than fifty pounds, which he can no longer do because of the direct left inguinal hernia giving rise to his current claim in I.C. file number 466695 for the reasons more fully hereinafter described.
3. Since 21 March 1995 plaintiff has been employed by Dillard Paper Company as a van driver responsible for delivering reams of paper weighing only in the ten to fifteen pound range. This was substantially lighter than the work he had always done requiring regular lifting of more than fifty pounds as with each of his jobs with Orange Recycling and Carolina Sunrock. Plaintiff is only able to earn $340.00 per week during this lighter duty work rather than the $413.59 he was able to earn as a quality control technician for defendant-employer Carolina Sunrock prior to the 25 August 1994 injury giving rise to his concurrent claim in I.C. file number 466695.
4. In March of 1994 plaintiff was employed by defendant-employer Orange Recycling Services as a truck driver responsible for loading and unloading recycling requiring him to regularly lift as much as a 100 to 150 pounds.
5. Prior to being employed by Orange Recycling plaintiff had suffered three work-related hernias lifting, a left sided one in April 1988 and right sided ones in July 1990 and November 1991. Each of these incidents were surgically repaired and his treating surgeons had released without restrictions to return to work and again lift more than fifty pounds. Plaintiff was able to do this each time, but subsequently sustained further hernias lifting.
6. While picking up recycled library cards at UNC Library on 16 March 1994 plaintiff sustained the admittedly compensable injury giving rise to the Industrial Commission's prior Award in I.C. file number 423957. The injury occurred as he attempted to stack one barrel of recycled library cards on top of another and resulting in bilateral hernias requiring him to undergo further surgery on 15 April 1994 by Dr. David Powell, a surgeon associated with Wake Surgical Center in Raleigh.
7. The left sided hernia that plaintiff sustained on 16 March 1994 was an indirect inguinal hernia occurring at the site of the internal ring where the spermatic cord exits the abdominal wall and one that Dr. Powell repaired by use of a mesh plug. Conversely, the direct left inguinal hernia giving rise hereto that was located at an entirely different site centrally toward the midline.
8. By 31 May 1994 plaintiff was totally healed from the repair of his bilateral hernias and Dr. Powell released him to return to light work with limited lifting for two weeks, followed by return to unrestricted work.
9. Although defendant-employer Orange Recycling Service had suitable light work available for him on 1 June 1994 and he was capable of returning to his regular job there two weeks later, plaintiff unjustifiably refused to return to work for the same employer. Plaintiff refused to return to work despite not only Dr. Powell releasing him to do so, but each of the three other surgeons that had repaired his earlier hernias doing so as well. This is despite plaintiff's contention that none of his surgeons should have released him to return to work without providing some type of lifting restrictions given his prior history of having sustained five work related hernias lifting.
10. After Dr. Powell had released him to return to work plaintiff requested that his family physician, Dr. James McGrath, a board certified family practitioner, arrange for him to be evaluated by another surgeon to determine whether he should return to work involving unrestricted lifting. At his request Dr. McGrath referred plaintiff to Dr. Phillip Shadduck, a general surgeon associated with Regional Surgical Associates in Durham, who saw him on 11 July 1994 and concurred in Dr. Powell's opinion that plaintiff did not have any type of permanent disability limiting him from returning to unrestricted work.
At the time of this evaluation, Dr. Shadduck's diagnosis was uncertain as to whether plaintiff had sustained a recurrent hernia although Dr. Shadduck was able to determine that there was a small questionable bulge in plaintiff's right groin area.
11. Although he had earlier sought employment after being terminated by Orange Recycling Services, plaintiff was not able to obtain any until returning to work for Carolina Sunrock on 25 July 1994 as a quality control technician. In that position plaintiff's responsibilities included taking rock and asphalt samples which required him to lift two and a half and five gallon buckets of the same materials weighing in the fifty to eighty-five pound range.
12. Prior to being employed by defendant-employer Carolina Sunrock Corporation plaintiff had undergone a pre-employment physical by the company physician, Dr. Tamara Stall, who was aware of his history of bilateral hernia repair, but who did not yet diagnose a hernia at that time. Plaintiff began work for Carolina Sunrock three days later.
13. Despite experiencing pain as a normal consequence of having undergone hernia repair, plaintiff, who had undergone a bilateral hernia repair only four months earlier, was concerned because he was experiencing pain and swelling. Therefore, he called Dr. Stall's office on 4 August 1994. Prior to 25 August 1994 plaintiff had not sustained recurrent hernias since his bilateral hernias were repaired by Dr. Powell in April of that year and, in particular, plaintiff was not suffering from a left direct inguinal hernia.
14. As part of his ordinary duties as a quality control technician, plaintiff occasionally was responsible for unloading trucks delivering needed materials. On 25 August 1994 plaintiff's supervisor directed that he move some concrete assembly parts weighing in the 150 to 175 pound range from the loading dock to the construction site. After counting and loading the parts into a wheelbarrow, plaintiff pushed the load of parts to the construction site which required him to go up a ramp to reach it. In the process of pushing the load of concrete assembly parts up the ramp plaintiff experienced an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. As plaintiff was proceeding up the ramp the load shifted and as a result plaintiff sustained a muscle strain in his right groin area and a direct left inguinal hernia. This incident on 25 August 1994 constituted a specific traumatic incident which was manifested by the sudden and severe onset of pain and swelling which did not exist prior thereto and was located in an entirely different site from the indirect left inguinal hernia plaintiff had suffered in March of that year working for co-defendant Orange Recycling Services.
15. On the afternoon of 25 August 1994 plaintiff returned to Dr. Stall complaining of bilateral groin pain after lifting and pushing a wheelbarrow that morning. Because of the possibilities of recurrent hernias manifested by the bilateral groin pain and swelling he was experiencing, Dr. Stall recommended that he be referred for surgical evaluation.
16. In the interim, on 13 September 1994 plaintiff returned to his family physician, Dr. McGrath with complaints of right groin pain and swelling as a result of his injury at work on 25 August 1994. At that time plaintiff was no longer experiencing acute pain and swelling in his left groin area. This is not inconsistent with the fact that not all hernias are painful and that there was pain associated with the strain occurring when the load shifted in the wheelbarrow.
17. Because plaintiff was complaining of a right sided groin bulge when he returned to Dr. McGrath for follow up, on 6 October 1994 Dr. McGrath referred him to a urologist for evaluation. The urologist, Dr. Grimes, evaluated plaintiff a week later and detected the left direct inguinal hernia he sustained when the wheelbarrow load of concrete assembly parts shifted on 25 August 1994 and recommended referral to a surgeon because of his prior history of hernias.
18. With his diagnosis of a right groin muscle strain and with his continued concerns regarding the possibility of plaintiff having sustained a recurrent direct left inguinal hernia, Dr. McGrath subsequently referred plaintiff to a surgeon, Dr. James Bowman. Dr. Bowman surgically repaired plaintiff's left direct hernia on 25 January 1995.
19. Although he was not then able to return to his regular quality control technician's job regularly requiring him to lift in excess of fifty pounds, by 21 February 1995 plaintiff had sufficiently recovered from the repair of his direct left inguinal hernia so as to be able to return to light work that did not require him to lift in excess of ten pounds the first month, twenty pounds the second and fifty pounds the third. Defendant-employer, however, never offered plaintiff any suitable alternate work and, although attempting to find the same himself, he was unable to until obtaining his current job as Dillard Paper Company as a delivery driver on 21 March 1995.
20. Plaintiff has fully recovered from the muscle strain in the right groin sustained on 25 August 1995. As a result of the direct left inguinal hernia sustained on the same date, other than scar tissue, plaintiff has not sustained any type of permanent tissue or organ damage to any important internal or external organ or part of the body which would entitle him to an Award of compensation under the provisions of G.S. 97-31(24). Because of the hernia repair that plaintiff underwent for his direct left inguinal hernia, where Dr. Bowman used an artificial mesh to reduce the risk of further hernias, plaintiff will not have any ongoing medical problems requiring further medical treatment nor will he require further surgery because of this particular injury.
21. Although the plaintiff has not suffered any type of permanent tissue damage or organ injury entitling him to an Award of compensation benefits pursuant to the provisions of G.S.97-31(24), he does have a permanent condition of hernia susceptibility from the left direct inguinal hernia sustained on 25 August 1994 because of the substantial risk that he will suffer recurrent hernias if he continues jobs requiring him to regularly lift more than fifty pounds. As a result of this condition, plaintiff's physicians, both Drs. Bowman and McGrath, advised him to attempt to find employment requiring him to lift less than fifty pounds. Plaintiff had not been so advised at any time prior to his 25 August 1994 hernia by any of the four surgeons that had treated his earlier five hernias. Rather, plaintiff had always been released to return to unrestricted work and had always done so on the advice of his physicians despite questioning the soundness of that advice.
22. Due to his permanent condition of hernia susceptibility, plaintiff is unable to return to his regular quality control technician's job for defendant-employer Carolina Sunrock Corporation or the type of heavy work that he had always done earning the same $413.59 average weekly wage. Rather, plaintiff has sustained a diminution in his wage earning capacity and is only capable of returning to lower paying lighter work jobs not requiring him to lift in excess of fifty pounds and consistent with his age, education, background and work experience entitling him to be compensated for the resulting permanent, but partial diminution in wage earning capacity. To his credit, and as previously stated, plaintiff is currently enrolled at a local community college attempting to obtain the retraining necessary to qualify for higher paying lighter work.
23. Defendant-employer Carolina Sunrock Corporation has never offered to provide plaintiff with the type of lighter work required by the left direct inguinal hernia sustained on 25 August 1994 forcing plaintiff to attempt to find the same employment himself. Despite his earlier attempts to find suitable lighter work, the first job plaintiff obtained is his current one at Dillard Paper and it can be reasonably presumed that plaintiff sought and obtained the highest paying light work job available consistent with his age, education, background and work experience, which previously involved work requiring the lifting of more than fifty (50) pounds. Plaintiff is now only capable of earning $340.00 per week because of his permanent condition of hernia susceptibility entitling him to be compensated for the resulting diminution in his wage earning capacity based on the difference between the $413.59 average weekly wage he was able to earn at the time of the left direct inguinal hernia giving rise hereto on 25 August 1994 and the diminished average weekly wage that he is now able to earn, which at the present time is the $340.00 at Dillard Paper Company, subject to a change of condition, medical or employment, including as part thereof, him receiving an increase in his average weekly wage at Dillard Paper Company or being able to obtain other higher paying light work, either as a result of the retraining that his is undergoing at Vance-Granville Community College or otherwise.
24. This appeal was brought by the insurer and herein the Full Commission affirms the Award of benefits to plaintiff, including medical expenses.
* * * * * * * * * * * * * *
Based on the foregoing and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 25 August 1995 plaintiff sustained an injury by accident arising out of and in the course of his employment by defendant Carolina Sunrock Corporation not only resulting in a muscle strain in his right groin, but a direct left inguinal hernia, which appeared suddenly, immediately followed the same accident and did not exist prior thereto. G.S. § 97-26; G.S. § 97-2(18).
2. As a result of the injury by accident giving rise hereto plaintiff was temporarily totally disabled from 25 August 1994 until 21 March 1995 entitling him to compensation at the rate of $275.74 per week during this same period. G.S. § 97-29.
3. For the reasons stated in the above Findings of Fact as a result of his 25 August 1994 injury plaintiff has not sustained the loss of or a permanent injury to any important external organ or part of the body for which compensation is payable pursuant to G.S. § 97-31(24); however, even assuming arguendo that he has, the more munificent remedy is to compensate plaintiff for the diminution of his wage earning capacity. G.S. § 97-30.
4. As a result of his 25 August 1994 injury plaintiff has been permanently, but partially disabled since 21 March 1995 entitling him to compensation at a rate of two-thirds of the difference between the $413.59 average weekly wage he was able to earn at the time of the injury and the $340.00 average weekly wage he has been able to earn since 21 March 1995, or $49.06 per week, subject to a change of condition, medical or employment, however, such compensation shall be payable for a maximum of 300 weeks from the 25 August 1995 date of injury, subject to deduction of the temporary total disability benefits paid from 25 August 1994 to 21 March 1995.
5. Because this appeal was brought by the insurer and herein the Full Commission affirms the Award of benefits including medical expenses to plaintiff, counsel for plaintiff is entitled to an attorney's fee of $500.00 for his representation of plaintiff at the Full Commission level. This fee is in addition to that provided in Award paragraph (2) and is to be paid by defendants as part of the bill of costs. G.S. § 97-88.
* * * * * * * * * * * * *
Based on the foregoing finding of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer Carolina Sunrock Corporation and its carrier, ITT Hartford, shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $275.74 per week during the period from 25 August 1994 to 21 March 1995. Thereafter defendant Carolina Sunrock Corporation and its carrier, ITT Hartford shall pay plaintiff compensation on account of his temporary partial disability at a rate of two-thirds of the difference between the $413.59 average weekly wage he was able to earn at the time of his 25 August 1994 injury for defendant Carolina Sunrock Corporation and the reduced $340.00 average weekly wage that he has earned since 21 March 1995 performing lighter work for Dillard Paper Company or $49.06 per week; provided, however, such compensation shall be payable for a maximum of 300 weeks from the 25 August 1994 date of injury, subject to a deduction of the temporary total disability benefits paid from 25 August 1994 to 21 March 1995 and to a change of condition, medical or employment. Such compensation as has accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney's fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of 25% of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of his fee defendant Carolina Sunrock Corporation and its carrier, ITT Hartford Insurance Company, shall forward every fourth compensation check payable directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants Carolina Sunrock Corporation and its carrier, ITT Hartford Insurance Company, shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the 25 August 1994 injury giving rise hereto when bills for the same are submitted in accordance with Industrial Commission Rules.
4. Defendant Carolina Sunrock Corporation and its carrier, ITT Hartford Insurance Company, shall pay the costs, including as part thereof reimbursing co-defendant Orange Recycling and its carrier, Travelers Insurance Company, for the expert witness fees previously awarded Drs. Bowman and McGrath as well as the associated costs of their depositions.
5. Defendant Carolina Sunrock Corporation and its carrier, ITT Hartford Insurance Company shall pay an attorney's fee of $500.00 to counsel for plaintiff for his representation of plaintiff at the Full Commission level. This fee is in addition to that provided for in Award paragraph (2) and is to be paid by defendants as part of the bill of costs.
IT IS FURTHER ORDERED that co-defendant Orange Recycling Center and its carrier, Travelers Insurance Company, be DISMISSED without prejudice.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _______________ DIANNE C. SELLERS COMMISSIONER